NO. 07-02-0479-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



FEBRUARY 27, 2004



______________________________




JERRY LEE PEREZ, APPELLANT



v.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;



NO. CR-00D-058; HON. RICHARD DAMBOLD, PRESIDING



_______________________________



Before REAVIS and CAMPBELL, JJ., and BOYD, S.J. (1)

 In this appeal, appellant Jerry Lee Perez seeks reversal of his conviction for
indecency with a child and the ensuing jury-assessed punishment of 20 years confinement
in the Institutional Division of the Texas Department of Criminal Justice. In doing so, he
presents three issues for our decision. In those issues he contends: 1) the trial court erred
in admitting appellant's statement into evidence; 2) the trial court erred in admitting
appellant's statement for impeachment purposes; and 3) appellant was denied effective
assistance of counsel at trial. We affirm the judgment of the trial court.

Factual Background

 The nature of appellant's challenges requires a brief recitation of the relevant
evidence. On February 12, 2000, Hereford Police Department Officer Allison Forbis was
dispatched to a residence in Hereford in response to a sexual assault charge. She
estimated she arrived at the residence within three minutes of receiving the call. Upon her
arrival, she was met by Frank DeLaPaz, who appeared to be upset and angry. DeLaPaz
told the officer that he had awakened from an afternoon nap and looked into the living room
of his residence. He saw N.D. (2) trying to get up out of appellant's lap and appellant refusing
to let her do so. He also said he saw appellant's hand moving on N.D.'s private parts.

 On cross-examination, DeLaPaz testified that he told appellant: "I saw you do this,
Jerry. Leave now." Appellant's counsel then asked DeLaPaz, ". . . what did [appellant] say
to you," to which he responded: "He said he didn't do nothing. I said, Jerry, I saw you." 
N.D. testified and said that appellant had touched her middle, a term which she used to
describe the female genitalia.

 The trial court then conducted a hearing outside the presence of the jury to
determine the admissibility of a statement made by appellant subsequent to the date of the
alleged offense. At the hearing, Department of Public Safety (DPS) Trooper Brian J.
Burzynski testified that on or about December 31, 2000, he stopped appellant because he
was driving a car with an expired license plate. The officer ended up arresting appellant
because he had a fictitious inspection certificate. Appellant was taken to the highway patrol
office where he was given his Miranda (3) warnings. The statement taken also contained all
the usual Miranda warnings. After the officer took that statement, he took appellant back
to the jail. Officer Burzynski then ran a criminal history check on appellant. His check of
that history revealed the indecency with a child charge which, the officer averred, he
believed was final. He asked appellant for his sexual offender registration card and, when
he discovered appellant had no such card, he took him back to the Highway Patrol office
because he believed appellant was guilty of the offense of failing to register as a sex
offender, a felony grade offense. He again read appellant Miranda warnings because, he
said, he was going to ask him about that offense. However, he discovered that appellant
had not yet been convicted of that crime. 

 The officer then asked appellant if he had an attorney and was told that he did, but
because appellant could not remember the attorney's name or whether the attorney was
male or female, he was skeptical whether appellant had an attorney. Burzynski then called
an assistant Deaf Smith County District Attorney for help in determining if appellant actually
had an attorney. However, he received an indefinite answer. The officer decided that
appellant was lying about having an attorney, so he went ahead and took a written
statement from appellant. In the written statement, appellant made incriminating statements
about the indecency charge. 

 As a result of the hearing, the trial court found that the statement was voluntary but
it was not admissible during the State's case-in-chief because appellant had an attorney
and his Sixth Amendment right to counsel was violated. Even so, the court opined, because
the statement was voluntary, it could be used for impeachment purposes if that door was
opened.

 The statement was tendered during the State's case-in-chief, after the cross-examination of DeLaPaz, and was admitted over appellant's Fifth Amendment, Sixth
Amendment and improper impeachment objections. However, other than those objections,
no limiting instruction was requested or given. Other portions of the evidence will be
referred to if necessary for a proper discussion of our decision. 

Discussion

 Because a trial court must be given wide latitude to admit or exclude evidence as it
sees fit, a trial court's evidentiary rulings are reviewed under an abuse of discretion
standard. Thus, as long as the trial court's ruling is within the zone of reasonable
disagreement, an appellate court will not disturb it. Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997); Theus v. State, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992);
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

 The Sixth Amendment right to counsel attaches at the initiation of adversarial
proceedings against an individual. Once that right attaches, government efforts to elicit
information from an accused, including interrogation, represent critical stages at which the
right to counsel applies. Additionally, once that right to counsel has attached and has been
invoked, as here, any subsequent waiver of that right is ineffective unless counsel has first
given permission for the interrogation. Cobb v. State, 93 S.W.3d 1, 6 (Tex. Crim. App.
2000), rev'd on other grounds, 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001). 

 In Cobb, the court explicated the Sixth Amendment right to counsel and pointed out
that the right to counsel attaches at the initiation of adversarial proceedings. Id. at 5. As
significant here, the court opined, "[o]nce the Sixth Amendment right to counsel attaches,
government efforts to elicit information from the accused, including interrogation, represent
'critical stages' at which the right to counsel applies." Id. It also emphasized that once the
right to counsel has attached, "any subsequent waiver during police initiated interrogation
is ineffective unless counsel has first given permission for the interrogation." Id. at 6, citing
Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). Additionally,
the State's knowledge of the claiming of the right to counsel from one state actor is imputed
to another state actor. Cobb v. State, 93 S.W.3d at 6.

 In relevant part, article 38.22 of the Code of Criminal Procedure provides:

 Sec. 5. Nothing in this article precludes the admission . . . of a voluntary
statement, whether or not the result of custodial interrogation, that has a
bearing upon the credibility of the accused as a witness, or of any other
statement that may be admissible under law.


Tex. Code Crim. Proc. Ann. art. 38.22 §5 (Vernon Supp. 2004). Moreover, even though
a defendant does not testify, a hearsay statement may be subject to impeachment. Appling
v. State, 904 S.W.2d 912, 917 (Tex. App.-Corpus Christi 1995, pet. ref'd). It is true that
courts have refused to allow impeachment by prior inconsistent statements used as a mere
subterfuge to get before the jury evidence not otherwise admissible. See Hughes v. State,
4 S.W.3d 1, 4 (Tex. Crim. App. 1999); Kelly v. State, 60 S.W.3d 299, 301 (Tex. App.-
Dallas 2001, no pet.). 

 Thus, in order for appellant's statement to have been admissible under article 38.22
§5, two criteria must have been satisfied. First, the statement must have been voluntary,
and second, the statement must have some bearing on appellant's credibility. With respect
to the first criterion, the record justifies the trial court's conclusion that the statement was
voluntary. With respect to the second criterion, we must consider whether the statement
had some bearing on appellant's credibility. The record shows that the incriminating
statements contained in his written statement bore directly on the credibility of his statement
to the child's father at the time of the incident, produced during cross-examination of
DeLaPaz, that he "didn't do [anything]." Moreover, there is nothing that indicates the State
improperly provoked the testimony regarding appellant's hearsay statement to DeLaPaz.

 Parenthetically, we have not overlooked appellant's position that his statement was
not hearsay but was a mere description of events. We disagree with that proposition. 
Hearsay is a statement, other than one made by the declarant while testifying at a trial or
hearing, offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d); see also
Lyons v. Ware, 668 S.W.2d 767, 768 (Tex. App.-Houston [1st Dist.] 1984, pet. ref'd). It is
obvious that appellant's answer was elicited by his attorney for its purported truth, i.e., that
he had not committed any crime. Thus, it was a hearsay statement subject to impeachment
if any of the other prerequisites to its use were met. Because it was inconsistent with his
statement he "didn't do [anything]," appellant's written statement with incriminating content
was properly admitted for impeachment purposes.

 The general rule is that evidence properly admitted for impeachment purposes is
without probative value and cannot be considered as evidence of the defendant's guilt. Key
v. State, 492 S.W.2d 514, 516 (Tex. Crim. App. 1973). If requested, when evidence is
admitted for a limited purpose, the court may restrict the evidence to its proper scope and
instruct the jury accordingly. Tex. R. Evid. 105(a). However, in the absence of such a
request, "the court's action in admitting such evidence without limitation shall not be a
ground for complaint on appeal." Id. It is the burden of the party opposing the admission
of the evidence to request a limiting instruction and, in the event of the failure of the party
to request such a limiting instruction, the evidence is admitted for all purposes. Hammock
v. State, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001). Under this record, the trial court did
not abuse its discretion and commit reversible error in admitting the statement. Appellant's
first two issues are overruled. 

 As we have noted above, in his third issue, appellant contends that he was denied
the effective assistance of counsel at trial. Specifically, appellant faults his counsel for
failing to request an instruction that the statement could only be considered for
impeachment purposes and had no probative value. He also suggests that counsel should
have requested a jury charge to that effect. Additionally, he posits that in addition to the
objections made, trial counsel should have raised a Rule 403 objection. (4)

 In considering this ineffectiveness challenge, we must measure it by the standard
explicated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984) and made applicable in Texas in Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex.
Crim. App. 1986). See also McFarland v. State, 928 S.W.2d 482, 499-500 (Tex. Crim. App.
1996), cert. denied, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). 

 Synthesized, the teaching of the cases is that to show ineffectiveness, a claimant
must prove that trial counsel's performance so undermined the proper functioning of the
adversarial process that the trial cannot be relied upon as having produced a just result. 
In doing so, the claimant must prove: 1) his counsel's performance was deficient, and 2)
the deficient performance was so serious that it prejudiced his defense. That means that
the claimant must prove by a preponderance of the evidence that counsel's representation
fell below the standard of prevailing professional norms, and there is a reasonable
probability that but for counsel's deficiency, the result of the trial would have been different. 
The review of counsel's performance is highly deferential and in conducting that review, the
reviewing court must indulge a strong presumption that counsel's conduct falls within a wide
range of reasonable performance. 

 In addition to identifying the acts or omissions alleged to have been ineffective, the
claimant must affirmatively establish that they fell below the professional norm for
reasonableness. After proving error, the claimant must affirmatively prove prejudice,
namely, that counsel's errors, judged by the totality of the representation and not by isolated
instances of error or by only a portion of the trial, denied him a fair trial. It is not enough for
the claimant to show that the errors had some conceivable effect upon the outcome of the
trial, but he must show that there is a reasonable probability that but for counsel's errors,
the factfinder would have had a reasonable doubt respecting guilt. In reviewing the
claimant's showing, the reviewing court considers the totality of the evidence before the jury
and that record must affirmatively show the alleged ineffectiveness. The failure to make the
required showing of either deficient performance or sufficient prejudice defeats the
ineffectiveness claim. See McFarland, 928 S.W.2d at 500.

 In considering the record, the State presented evidence that 1) DeLaPaz was an
eyewitness to the offense; 2) Officer Allison Forbis averred that the victim had stated to her
that appellant had touched her genitals; 3) the child testified that appellant had touched her
genitals with his hand and that she tried to push him away; and 4) Sheri Nivens, a
registered nurse, testified that she had observed redness on the child's genitals which was
consistent with the child's testimony. Under the totality of the evidence in this record, it is
not reasonably probable that the outcome of the trial would have been different if trial
counsel had requested a limiting instruction.

 Moreover, it is possible that trial counsel may have believed that a limiting instruction
would have emphasized the importance of the statement and drawn additional attention to
it. Indeed, the record is silent about the reasoning and strategy that may have been
underlying trial counsel's actions. In this state of the record, we may not speculate about
the reasoning that may have been employed by trial counsel and whether that reasoning
was faulty. See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Because
appellant has failed to prove either deficient performance on trial counsel's part or sufficient
prejudice from trial counsel's conduct, we must, and do, overrule appellant's third issue.

 In sum, all of appellant's issues are overruled and the judgment of the trial court is
affirmed.


 John T. Boyd

 Senior Justice


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004). 
2. The child in question.
3. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
4. The probative value of the evidence was substantially outweighed by the danger
of unfair prejudice. See Tex. R. Evid. 404.



iHidden="false"
 UnhideWhenUsed="false" Name="Colorful List Accent 6"/>
 
 
 
 
 
 
 
 
 









NO. 07-10-00218-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JULY
13, 2010

 



 

JULIAN BARTOLO ORTIZ, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 242ND DISTRICT COURT OF CASTRO
COUNTY;

 

NO. B2949-0407; HONORABLE EDWARD LEE SELF, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Pending before the court is the
motion of appellant Julian Bartolo Ortiz to dismiss
his appeal.  Appellant and his attorney
have both signed the motion.  Tex. R. App. P. 42.2(a). 
No decision of this court having been delivered to date, we grant the
motion.  Accordingly, the appeal is
dismissed.  No motion for rehearing will
be entertained and our mandate will issue forthwith.

                                                                                                James
T. Campbell

                                                                                                            Justice

Do not
publish.